1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORDAN RAY VANDERHOFF,                 Case No.  1:23-cv-01175-HBK

12              Plaintiff,                  ORDER AFFIRMING THE DECISION OF
                                            THE COMMISSIONER OF SOCIAL
13        v.                                SECURITY[1]

14   COMMISSIONER OF SOCIAL                 (Doc. Nos. 15, 17)
     SECURITY,
15
                Defendant.
16

17

18

19

20        Jordan Ray Vanderhoff ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22   supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

23   currently before the undersigned on the parties' briefs, which were submitted without oral

24   argument.  (Doc. Nos. 15, 17).  For the reasons stated, the Court denies Plaintiff's motion for

25   summary judgment, grants Defendant's motion for summary judgment, and affirms the

26   Commissioner's decision.

27   _____

28   [1]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 10).

1    **I.    JURISDICTION**

2    Plaintiff protectively filed for supplemental security income on January 1, 2020, alleging a

3    disability onset date of November 19, 1999.  (AR 253-59).  At the hearing, the alleged onset date

4    was amended to January 1, 2020.  (AR 22).  Benefits were denied initially (AR 43-63, 104-09)

5    and upon reconsideration (AR 64-82, 111-16).  Plaintiff appeared for a telephonic hearing before

6    an administrative law judge ("ALJ") on June 28, 2022.  (AR 14-42).  Plaintiff testified at the

7    hearing and was represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 83-101) and the

8    Appeals Council denied review (AR 8-13).  The matter is before the Court under 42 U.S.C. §

9    1383(c)(3).

10    **II.    BACKGROUND**

11    The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

12    decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

13    summarized here.

14    Plaintiff was 22 years old at the time of the hearing.  (AR 36).  She completed eleventh

15    grade and was in special education classes.  (AR 270).  She lives with her mother.  (*See* AR 281).

16    She has no past relevant work.  (AR 37).  Plaintiff testified she has trouble talking to people in

17    cars, making phone calls, and "going out in general."  (AR 24).  She avoids aisles at the grocery

18    store that have more than two people because she starts shaking and has trouble breathing, and

19    she has difficulty waiting in line and a "couple of time" has become so overwhelmed she had to

20    leave the store.  (AR 25-27).  Plaintiff reported she stays in her house "most of the time" because

21    of anxiety and stress at public events.  (AR 28-29).  Plaintiff testified she has irritable bowel

22    syndrome (IBS) but she is not "100 percent sure" why her weight is "less than most people"; and

23    reports she feels sick lots of days, has anxiety, and sometimes forgets to eat for unknown reasons.

24    (AR 40-41).

25    **III.    STANDARD OF REVIEW**

26    A district court's review of a final decision of the Commissioner of Social Security is

27    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

28    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

2

1   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

2   evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support

3   a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial

4   evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation

5   and citation omitted). In determining whether the standard has been satisfied, a reviewing court

6   must consider the entire record as a whole rather than searching for supporting evidence in

7   isolation. *Id.*

8        In reviewing a denial of benefits, a district court may not substitute its judgment for that of

9   the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible

10  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11  2008). Further, a district court will not reverse an ALJ's decision on account of an error that is

12  harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate

13  nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's

14  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

15  U.S. 396, 409-10 (2009).

16            **IV.   SEQUENTIAL EVALUATION PROCESS**

17       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

18  the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful

19  activity by reason of any medically determinable physical or mental impairment which can be

20  expected to result in death or which has lasted or can be expected to last for a continuous period

21  of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment

22  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

23  considering his age, education, and work experience, engage in any other kind of substantial

24  gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

25       The Commissioner has established a five-step sequential analysis to determine whether a

26  claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the

27  Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

28  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

1   claimant is not disabled.  20 C.F.R. § 416.920(b).

2          If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

3   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

4   C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

5   impairments which significantly limits [his or her] physical or mental ability to do basic work

6   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

7   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

8   claimant is not disabled.  20 C.F.R. § 416.920(c).

9          At step three, the Commissioner compares the claimant's impairment to severe

10  impairments recognized by the Commissioner to be so severe as to preclude a person from

11  engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

12  severe or more severe than one of the enumerated impairments, the Commissioner must find the

13  claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

14         If the severity of the claimant's impairment does not meet or exceed the severity of the

15  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

16  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

17  ability to perform physical and mental work activities on a sustained basis despite his or her

18  limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

19         At step four, the Commissioner considers whether, in view of the claimant's RFC, the

20  claimant is capable of performing work that he or she has performed in the past (past relevant

21  work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

22  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

23  the claimant is incapable of performing such work, the analysis proceeds to step five.

24         At step five, the Commissioner considers whether, in view of the claimant's RFC, the

25  claimant is capable of performing other work in the national economy.  20 C.F.R. §

26  416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

27  factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

28  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran

v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.    ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

since January 1, 2020, the amended alleged onset date.  (AR 88).  At step two, the ALJ found that

Plaintiff has the following severe impairments: autism disorder, depressive disorder, and panic

disorder.  (AR 88).  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed impairment.

(AR 89).  The ALJ then found that Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: can perform detailed and
> complex tasks with no interaction with the public, can interact with
> co-employees within groups of no more than 1 or 2, can participate
> in teamwork with 1 or 2 individual employees, and no more than
> infrequent changes in work routine.

(AR 90).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 94).  At step

five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there

are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

including hand packer, cleaner II, and cleaner, industrial.  (AR 95).  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social Security Act,

since January 1, 2020, the amended alleged onset date.  (AR 95).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her

supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).

1   Plaintiff raises the following issues for this Court's review:

2       1.  Whether the ALJ failed to fully evaluate whether Plaintiff's impairments equal a

3           listing at step three; and

4       2.  Whether the ALJ properly considered Plaintiff's symptom claims.

5   (Doc. No. 15 at 7-16).

6                               **VII.   DISCUSSION**

7       **A.  Step Three**

8       At step three of the evaluation process, the ALJ must determine whether a claimant has an

9   impairment or combination of impairments that meets or equals an impairment contained in the

10  listings.  *See* 20 C.F.R. § 416.920(d).  The listings describe "each of the major body systems

11  impairments [considered] to be severe enough to prevent an individual from doing any gainful

12  activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 416.925.  An

13  impairment "meets" a listing if it meets all of the specified medical criteria.  *Sullivan v. Zebley,*

14  493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098.  An impairment that manifests only some of

15  the criteria, no matter how severely, does not qualify.  *Sullivan,* 493 U.S. at 530; *Tackett,* 180

16  F.3d at 1099.

17      An unlisted impairment or combination of impairments "equals" a listed impairment if

18  medical findings equal in severity to all of the criteria for the one most similar listed impairment

19  are present.  *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 416.926(b).  "Medical equivalence must

20  be based on medical findings," and "[a] generalized assertion of functional problems is not

21  enough to establish disability at step three." *Tackett*, 180 F.3d at 1099.  An unlisted impairment or

22  combination of impairments is equivalent to a listed impairment if medical findings are present

23  equal in severity to all of the criteria for the one most similar listed impairment.  *Sullivan,* 493

24  U.S. at 531; *see* 20 C.F.R. § 416.926(b).  "But a claimant cannot base a claim of equivalence on

25  symptoms alone.  Even if the claimant alleges pain or other symptoms that makes the impairment

26  more severe, the claimant's impairment does not medically equal a listed impairment unless the

27  claimant has signs and laboratory findings that are equal in severity to those set forth in a listing."

28  *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020).  The claimant bears the burden of

1   establishing an impairment (or combination of impairments) meets or equals the criteria of a

2   listed impairment.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

3          Here, at step three, the ALJ considered the severity of Plaintiff's claimed mental

4   impairments, singly and in combination, and found they do not meet or medically equal the

5   criteria of listings 12.04, 12.06, and 12.10.  (AR 89-90).  Plaintiff argues the ALJ "failed to fully

6   evaluate whether the Plaintiff's impairments equaled a listing at Step Three of the sequential

7   evaluation process."  (Doc. No. 15 at 7).  More specifically, Plaintiff contends the ALJ's step

8   three finding was not supported by substantial evidence because the ALJ failed to properly

9   consider whether Plaintiff's medically determinable impairment of irritable bowel syndrome

10  (IBS) medically equaled the criteria of listing 5.08, or in the alternative, that her mental

11  limitations medically equaled a "mental listing in combination with her weight loss."  (*Id*. at 9-

12  11).  Defendant argues the ALJ "had no duty to consider listing equivalency with Plaintiff's

13  physical impairment," and "even were the Court to consider Plaintiff's equivalency argument, it

14  is meritless because it does not establish the criteria for Listing 5.08."  (Doc. No. 17 at 4-6).  The

15  Court agrees.

16         Plaintiff is correct that in determining whether an impairment equals a listing at step three,

17  the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of

18  the impairments."  (Doc. No. 15 at 8 (citing *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir.

19  2013).  However, the ALJ "is not required to discuss the combined effects of a claimant's

20  impairments or compare them to any listing in an equivalency determination, unless the claimant

21  presents evidence in an effort to establish equivalence."  *Kennedy*, 738 F.3d at 1178 (quoting

22  *Burch*, 400 F.3d at 683); *see also Ford*, 950 F.3d at 1157.  As noted by Defendant, Plaintiff did

23  not argue at the administrative level that she had any severe physical impairments, nor did she

24  argue that a combination of physical and mental impairments equaled a listed impairment; to wit,

25  no physical impairment was listed in her function report nor is any listed in her disability report,

26  her attorney did not include any argument as such in the pre-hearing brief to the ALJ, she did not

27  allege physical limitations at the hearing, and her request to review the decision to the Appeals

28  Council did not make any argument regarding any physical impairment or any error at step three.

1  (Doc. No. 17 at 4 (citing AR 22-30, 40-42, 300, 307-13, 369-72).  Plaintiff concedes that she did

2  not present information regarding her IBS in a pre-hearing brief but argues that she "properly

3  presented evidence to the ALJ that would establish medical equivalence regarding her IBS and

4  mental impairments" because she "did inform the ALJ during the hearing and submitted medical

5  evidence into the record that documents her IBS and her weight issues."  (Doc. No. 18 at 4).

6        In support of this argument, Plaintiff cites a handful of medical records from 2020-2021

7  noting a history of IBS with constipation diagnosis, a single reported "flare-up" of IBS and

8  vomiting, a single instance of "unintentional overdose" along with reported "nausea every

9  morning," and a single report that she has been more constipated after having "issues with IBS for

10  some time" and requesting a referral to a gastroenterologist.  (Doc. No. 15 at 4-5 (citing AR 517-

11  18 (noting Plaintiff report that she does not eat healthy and drinks one cup of water a day, and

12  provider treatment recommendations to take prescription as directed, take fiber, maintain

13  adequate fluids, and avoid triggers), 650 (noting history of IBS and daily nausea, but assessing

14  treatment at this visit as accidental drug overdose with non-intractable vomiting with nausea), 700

15  (treatment recommendations include taking Zofran "as needed", 705 (referred to gastroenterology

16  upon Plaintiff's request, advised to take fiber supplement and maintain adequate fluids without

17  mention of IBS medication)).  Plaintiff also listed Plaintiff's height, weight, and BMI across the

18  relevant period as generally recorded during the "vitals and measurements" portion of physical

19  exams.  (*Id.* at 5-6).  And finally, Plaintiff cites her own testimony that she has "issues with

20  irritable bowel syndrome."[2]  (AR 40).

21        However, the entirety of Plaintiff's testimony as to IBS was as follows:

22          ALJ: … I do note that your weight is less than most people.  Do you
        have any explanation of why you're so light weight?

23

24

---

[2] To the extent discernable, Plaintiff also appears to argue that "the ALJ's cursory discussion of Plaintiff's

25  weight and IBS at step two," and lack of discussion of symptoms from IBS or weight at step four, were
insufficient to support the step three findings.  (Doc. No. 15 at 10).  However, Plaintiff does not

26  specifically challenge the ALJ's findings at step two or step four in her opening brief.  *Carmickle*, 533
F.3d at 1161 n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening

27  brief).  Moreover, as discussed in detail *supra*, Plaintiff did not carry her burden to present evidence in an
effort to establish that IBS equaled a listing, either singly or in combination with claimed mental

28  impairments.

1

PLAINTIFF: I'm not 100 percent sure.  It could be a combination of things.

2

ALJ: All right.

3

PLAINTIFF: I know that my IBS makes it so that way it's like I end up feeling sick a lot of days.  My anxiety definitely doesn't help my stomach feel any – like feel better on that front in and of itself.  And I, myself, forget to eat sometimes just because of, I don't know, my neurology or something.

4

5

6

ALJ: All right then. Anything else, [Plaintiff's counsel]?

7

ATTY: No. Thank you, Your Honor.

8

ALJ: Well, [Plaintiff's counsel], I did see there is a diagnosis, you are correct, of IBS, but I didn't see that any of the doctors clearly established the limitations that arise from it.  Is there any exhibit that I should be looking at that describes that?

9

10

11

ATTY: No.

12

ALJ: All right. All right, then, but I will look at that one more time. I'll review the entries concerning the irritable bowel syndrome.

13

14

(AR 41).  Based on the foregoing, Plaintiff did not fulfill her burden to present evidence or make

15

any argument that her IBS and weight issues, either singly or in combination with her mental

16

limitations, was equivalent to a listing at step three, and in fact, Plaintiff's attorney conceded that

17

there is no evidence in the record establishing limitations arising from IBS.  (Doc. No. 17 at 5-6).

18

"Because the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ

19

did not err in failing to do so."  *Ford*, 950 F.3d at 1148-49 (also noting that while plaintiff's

20

attorney made "passing reference" to a "combination of impairments" at the administrative

21

hearing, he did not argue or explain how any combination was medically equal to a listing); *see*

22

*also Burch*, 400 F.3d at 683.

23

Further, as argued by Defendant, even were the Court to consider Plaintiff's argument that

24

weight loss due to IBS, or a combination of IBS and alleged mental limitations, medically

25

equaled listing 5.08, it is meritless because she does not establish the criteria for listing 5.08.

26

(Doc. No. 17 at 6-7).  At the relevant time, to meet or equal listing 5.08, Plaintiff must establish

27

"[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with a

28

body mass index (BMI) of less than 17.50 calculated on at least two evaluations at least 60 days

apart within a consecutive 6-month period." [3] 20 C.F.R. § 404, Subpt. P, App. 1 § 5.08.  Plaintiff

argues she equals the listing because "the medical record documents that [she] has a long history

of treatment for IBS, has been chronically underweight at listing level, and has eating issues as a

result of [her] anxiety or autism."  (Doc. No. 15 at 9-10 (citing AR 512 (in March 2019 Plaintiff

requested refill on prescription for stool softener), 518 (in March 2020 she reported a history of

IBS), 700 (in October 2021 she was prescribed Zofran as she had received "in the past" for

nausea to take as needed), 706 (in August 2021 treating provider recommended only over the

counter fiber supplement and high fiber diet), 749 (Plaintiff's mother's report in 2018 that she

was a "picky eater" due to texture issues and "in the past" she would "swallow metal things" and

"like various items")).  In reply, Plaintiff further argued that "she did inform the ALJ during the

hearing and submitted medical evidence into the record that documents her IBS and her weight

issues," thereby making this case "analogous to *Nunes v. Berryhill* where the court found that the

plaintiff presented an abundance of evidence in an effort to establish equivalence." (Doc. No. 18

at 4-5).

    In *Nunes*, the Court found plaintiff's challenge to the ALJ's step three finding was not

waived for failure to present the ALJ with evidence in an effort to establish equivalence to listing

5.08 because Plaintiff presented an "abundance of such evidence" including notations in her pre-

hearing brief that she had difficulty eating and gaining weight because of IBS, she "clearly

presented her Listing 5.08 theory in her own words" at the hearing, and the record was "teeming

with medical evidence supporting a Listing 5.08 equivalency."  *Nunes v. Berryhill*, 2018 WL

1399852, at *5 (N.D. Cal. Mar. 20, 2018).  The ALJ further determined that the ALJ's failure to

consider and apply listing 5.08 at step three was not supported by substantial evidence.  *Id*.

However, this case is distinguishable from *Nunes* because, as discussed in detail *supra*, there was

no notation in the pre-hearing brief regarding difficulty with weight (AR 369-72),  Plaintiff did

not clearly present a theory at the hearing that her weight loss was due to IBS (AR 41 (counsel

replying "no" to ALJ question whether any exhibit in the record describes limitations arising from

---

[3] The parties appear to agree that this is version of Listing 5.08 applies in this case.  Listing 5.08 was later
revised to require the BMI calculations appear "within a consecutive 12-month period."

IBS)), and while the record contains several notations of diagnosis and treatment for IBS, as discussed above, it is not "teeming with" medical evidence to support a waiver of Plaintiff's burden at step three. *See Sperry v. Comm'r of Soc. Sec. Admin*., 2019 WL 1513203, at *5 (D. Ariz. Apr. 8, 2019) (considering plaintiff's reliance on *Nunes*, and finding "the ALJ did not err by not explicitly considering whether Plaintiff met or medically equaled Listing 5.08 at step three" in part because plaintiff's hearing testimony "did not suggest that she was intending to present a Listing 5.08 theory")

Moreover, regardless of the whether Plaintiff has sufficiently identified instances of BMI due to IBS within the requisite time period, she has not established that she was receiving "continuous treatment" for IBS across the longitudinal record based on the treatment notes cited above; nor, as argued by Defendant, has Plaintiff described how she adhered to a continuing treatment plan "as prescribed."  (Doc. No. 17 at 6-7); *see Perez v. O'Malley*, 2024 WL 3618440, at *6 (E.D. Cal. Aug. 1, 2024) ("Because Plaintiff did not show that her weight loss was due to a digestive disorder, Plaintiff did not sufficiently establish a listing equivalence"); *Standifer v. Colvin*, 2015 WL 3723967, at *5 (D. Nev. June 12, 2015) (finding no error in considering listing 5.08 at step three because plaintiff failed to show continued treatment as prescribed).  Finally, while not specifically challenged by Plaintiff in her opening brief, the ALJ considered Plaintiff's IBS at step two and found it was not a severe impairment.  *See Daron L.H. v. Comm'r Soc. Sec. Admin*., 2022 WL 4299138, at *3 (D. Or. Sept. 19, 2022) ("Finally, the ALJ did not identify any digestive disorder as a severe impairment in the step two findings.  The court's review of the record shows no evidence supporting a finding that [plaintiff's] weight loss is because of a digestive disorder that was actively being treated that satisfies all the criteria of Listing 5.08.").

For all of these reasons, Plaintiff has not met her burden in demonstrating her weight loss and IBS, either singly or in combination with mental impairments, equals listing 5.08.  The Court finds no error at step three.

**B.  Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

1   The ALJ first must determine whether there is "objective medical evidence of an underlying

2   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

3   *Id.* (internal quotation marks omitted).  "The claimant is not required to show that his impairment

4   could reasonably be expected to cause the severity of the symptom he has alleged; he need only

5   show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

6   F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

7           Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

8   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

9   gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

10  1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

11  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

12  undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

13  1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

14  credibility determination with findings sufficiently specific to permit the court to conclude that

15  the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

16  [evidence] standard is the most demanding required in Social Security cases."  *Garrison v.*

17  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

18  F.3d 920, 924 (9th Cir. 2002)).

19          Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

20  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

21  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

22  the medical evidence and other evidence in the record."  (AR 91)  Plaintiff argues the ALJ failed

23  to provide clear and convincing reasons for discounting her subjective complaints.  (Doc. No. 15

24  at 11-16)  First, the ALJ discounted Plaintiff's symptom claims because "[t]he medical evidence

25  indicates the claimant received routine conservative treatment for complaints of autism disorder,

26  depressive disorder, and panic disorder (agoraphobia)."  (AR 92)  Evidence of "conservative

27  treatment" may be sufficient to discount a claimant's testimony regarding the severity of an

28  impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d

1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).  Plaintiff argues treatment for mental impairments with medication and therapy is not conservative treatment, and generally argues that Plaintiff has "undergone significant and consistent treatment" for her impairments in addition to independent living services that help with cooking, cleaning, personal shopping, and assisting with medical appointments.  (Doc. No. 15 at 13-14 (citing AR 634, 755, 757-58, 764-65 (noting Plaintiff refused to attend several psychiatrist appointments), 767 (noting Plaintiff declined speaking to counselor)).  Plaintiff is correct that district courts in the Ninth Circuit have found the ALJ erred when discounting mental health symptom testimony based on conservative treatment with therapy and medication.  *See, e.g., Scott H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4249276, *4 (D. Or. June 29, 2023) (noting "this does not fit the Ninth Circuit's mold of 'conservative treatment' as a matter of law.") (collecting cases).

Defendant argues the ALJ reasonably found Plaintiff's symptom claims improved with routine conservative treatment.  (Doc. No. 17 at 9).  In support of this argument, Defendant cites the ALJ's summary of the medical evidence including Plaintiff's reports that her mental health "eased" after obtaining an appointment for hormones, her mood was better, she was feeling "pretty good," and improvement with medication.  (AR 92 (citing AR 528, 546, 767, 814, 845 (noting Plaintiff refused antidepressants), 856)).  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints).  Moreover, even assuming, arguendo, that the ALJ failed to properly consider the nature of Plaintiff's treatment for mental health impairments, any error is harmless because the ALJ offers additional reasoning, supported by substantial evidence, to discount Plaintiff's symptoms claims.  *See Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence).

1    Second, the ALJ found "there is no medical source statement from an examining or

2    treating physician that endorses the extent of the claimant's alleged functional limitations."  (AR

3    92).  Plaintiff argues this "assertion is belied by the record" because during one evaluation to

4    determine if she was eligible for services, Plaintiff was noted to show poor eye contact, possess

5    "substantial deficits in social interests and relationship skills," "nonverbal communication was

6    impoverished," and "showed limited facial expressions and social gestures"; and Plaintiff

7    received independent living services through Be the Light, an organization that provided

8    assistance with cooking, cleaning, personal shopping, attending medical appointments, applying

9    for benefits, and attempting to obtain housing. (Doc. No. 15 at 14-15 (citing AR 717, 738-41,

10   755, 758-62)).  Plaintiff also noted that state agency medical consultants opined that Plaintiff

11   "might miss 1-2 days per month" of work.  (Doc. No. 15 at 15 (citing AR 58, 77, 94)).  However,

12   the state agency medical consultants found Plaintiff was not disabled, and their opined limitations

13   did not, as noted by the ALJ, endorse the extent of limitations claimed by Plaintiff.  (AR 62, 80).

14   Moreover, as noted by Defendant, the records regarding Plaintiff's approval for independent

15   living services are based on her subjective complaints and general diagnoses and do not include a

16   medical source statement, and the examining psychologist opinion cited by Plaintiff "did not

17   opine or otherwise endorse functional limitations reflective of Plaintiff's testimony."  (Doc. No.

18   17 at 11-12 ("[i]n total, Plaintiff's presented evidence does not contradict the ALJ's finding that

19   Plaintiff lacked endorsement of her subjective complaints by treating or examining sources"); AR

20   708-22, 741-42, 755).

21       Thus, the ALJ reasonably relied on the lack of any corroborating medical source statement

22   in discounting the severity of Plaintiff's subjective claims.  *See Johnson v. Shalala*, 60 F.3d 1428,

23   1434 (9th Cir. 1995) (contradiction with the relevant medical record was a sufficient basis for the

24   ALJ to reject Plaintiff's subjective testimony); *Carmickle*, 533 F.3d at 1161; *see also Edna v.

25   Saul*, 2020 WL 1853312, at *8 (S.D. Cal. Apr. 13, 2020) (lack of medical opinion finding

26   Plaintiff disabled was a clear and convincing reason to reject Plaintiff's subjective allegations);

27   *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (ALJ reasonably considered that no

28   treating or examining physician found the claimant disabled).  This was a clear and convincing

14

1    reason for the ALJ to discount Plaintiff's symptom claims.

2         Third, the ALJ found the consistency of Plaintiff's allegations as to the severity of her

3    symptoms "was diminished because those allegations are greater than expected in light of the

4    objective evidence of record." (AR 92). In her opening brief, Plaintiff argues only that the lack

5    of medical evidence cannot be the sole basis for discounting testimony, without specifically

6    challenging the ALJ's findings or identifying objective evidence in the record in support of this

7    argument. (Doc. No. 15 at 13); *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider

8    issues not raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996,

9    1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly

10   argued" in the party's opening brief). On reply, Plaintiff cited several mental status examinations

11   from the overall medical record that observed poor eye contact and unproductive speech, anxious

12   and depressed mood, entitled and manipulative attitude, poor judgment and insight, and flat and

13   exaggerated affect. (Doc. No. 18 at 6-8 (citing AR 426, 592, 601, 632)).

14        Plaintiff is correct that an ALJ may not discredit a claimant's testimony and deny benefits

15   *solely* because the degree of impairment alleged is not supported by objective medical evidence.

16   (Doc. No. 15 at 13 (citing *Burch*, 400 F.3d at 681)). However, medical evidence is a relevant

17   factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v.*

18   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). Here, as discussed

19   above, the ALJ gave at least one additional reason, supported by substantial evidence, for

20   discounting Plaintiff's symptom claims. Moreover, the ALJ set out medical evidence

21   documenting normal mental status examination findings across the relevant adjudicatory period in

22   contradiction of Plaintiff's claims of disabling impairments, including only slightly restricted

23   affect, no lability, better mood, calm and coherent, able to provide background information

24   without observed limitations, good insight, good eye contact, normal thought process and thought

25   content, and good judgment. (AR 92, 528, 532-33, 546, 592-95, 813-14, 840-41, 856). Plaintiff

26   argues the ALJ improperly "cherry picked" evidence from the record to support his conclusion

27   without accounting for the context of the entire record. (Doc. No. 18 at 6); *see Ghanim v. Colvin*,

28   763 F.3d 1154, 1164 (9th Cir. 2014). However, as part of the summary of medical evidence the

ALJ explicitly recognized evidence in the record that could be considered more favorable to Plaintiff, including evidence from the precise treatment records cited by Plaintiff in support of her argument, and nonetheless found "the weight of the objective evidence does not support the claimant's claims of disabling limitations to the degree alleged." (AR 92). "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, when viewing the record as a whole, this was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

### VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims and did not err at step three. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED.

2.   Defendant's Cross-Motion for Summary Judgment (Doc. No. 17) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3.   The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:    January 6, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

16